UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MOSHE KUPERMAN,

        Plaintiff,

  -v-                                                 No.  20-CV-6834-LTS-DCF

CITY OF NEW YORK and RONALD JAMES,

        Defendants.

--------------------------------------------------------x

## MEMORANDUM ORDER

        Pro se plaintiff Moshe Kuperman asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq. ("Title VII"), 42 U.S.C. section 1981 ("Section 1981"), New York Executive Law section 290 et seq. (the "NYSHRL"), and New York City Administrative Code section 8-101 et seq. (the "NYCHRL"), against defendants the City of New York and Ronald James (together, "Defendants"), all arising out of Plaintiff's employment with the New York City Department of Education between September 2015 and June 2019.

        Defendants move for dismissal of Plaintiff's Complaint (docket entry no. 2 ("Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.  The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

The following allegations are taken from the Complaint and are presumed true for the purposes of this motion.

Plaintiff is a white, Jewish male who was employed as a probationary physical education teacher at Public School 202 ("P.S. 202") between September 2015 and June 2019. (Compl. ¶¶ 1-2; id. at 10.)[1]  During his first two school years (2015-2016 and 2016-2017), Plaintiff received "developing" and "effective" overall ratings. (Id. ¶ 4.)  In Plaintiff's third school year (2017-2018), Defendant James became Principal of P.S. 202. (Id. ¶ 3.)  In early 2018, Principal James twice observed Plaintiff's teaching and rated Plaintiff "ineffective." (Id. ¶¶ 5-7.)  Principal James told Plaintiff on the last day of that school year: "You scored low and I'll be frank with you.  You are untenured and your career is on the line." (Id. at 11.)  However, due to the observations of the Assistant Principal and Plaintiff's "Measure of Student Learning" score, Plaintiff was rated as "effective" for the 2017-2018 school year. (Id. ¶ 8.)

On September 8, 2018, during a professional development meeting at the beginning of the 2018-2019 school year, Principal James shared with the staff members present his story of why he became an educator. (Compl. ¶ 9; id. at 11.)  He stated that "his own parents had enrolled him in a predominantly European school in Queens in which he had two teachers, one who would make racist remarks and the other who was good to him." (Id. ¶ 9.)[2]  Principal

---

[1]   Plaintiff's Complaint includes a copy of this Court's form Employment Discrimination Complaint completed by Plaintiff, eleven pages of narrative text, and an "addendum" including thirty-two paragraph-numbered allegations.  The Court refers to the allegations in Plaintiff's addendum by paragraph number, and to all other allegations in the Complaint by the page number of the electronically-filed version of the Complaint.

While Plaintiff's Complaint details his experience at P.S. 202 at some length, this Background section focuses on those allegations most relevant to this motion.

[2]   The Court infers that Principal James is a non-Jewish person of color.

James wanted to "test" his staff's "why." (Id. at 11.) "As a white and Jewish male [in] the minority of the staff at P.S. 202," Plaintiff "felt directly threatened by these clear references to skin color." (Id. ¶ 10.)

On a few occasions in early 2019, Plaintiff's students insulted him with reference to his race and/or religion.[3] For instance, on January 7, 2019, a student called Plaintiff a "white rapist," and on or before January 17, 2019, one or more students called Plaintiff disgusting and asked if he was Jewish. (Compl. ¶ 29; id. at 12-13.) Plaintiff reported these incidents; his reports "went unanswered by Principal James and the students were not disciplined." (Id. ¶¶ 28, 30-31.)

On March 7, 2019, during a meeting with Plaintiff, Principal James asked if Plaintiff was Jewish. (Compl. ¶ 11.) Plaintiff said yes, and asked why Principal James was asking, to which Principal James replied that "he was just asking." (Id. at 14.) Principal James then "reviewed and explained the tenure rubrics." (Id.)

At some point before March 21, 2019, Plaintiff sought leave to be absent from work on that date for a religious holiday. According to Plaintiff, Principal James was "reluctant" to sign off on that request, and asked his secretary whether Plaintiff had taken the same day off the year before, but ultimately approved the request "because he did not want to be bothered with it while out of town for a conference." (Compl. ¶ 12.)

On May 21, 2019, Plaintiff had a "tenure meeting" scheduled with Principal James. (Compl. ¶ 14.) When Plaintiff arrived, he was told that his "tenure binder" did not "match the rubric," the meeting was adjourned, and Principal James subsequently "made no effort" either to reschedule the meeting or to offer Plaintiff information regarding his portfolio.

---

[3]   The student body of P.S. 202 is predominantly "of African American or Hispanic descent." (Compl. ¶ 2.)

(Id. ¶ 15.)  On June 12, 2019, Plaintiff "returned to school from a Jewish holiday," and was informed that he was "left off the organization sheet for the next school year."  (Id. ¶ 16.)  Two weeks later, Plaintiff "received a letter from the NYCDOE informing [him] of denial of completion of [his] tenure."  (Id. ¶ 17.)

According to Plaintiff, various other teachers who were not white and/or not Jewish were treated more favorably by school leadership.  For instance, Plaintiff names three African American teachers were also "up for tenure," and "received ongoing support by school administration" (including "information and advice on their portfolio" and "an extension of their probationary period[s]"), and were "not discontinued by Principal James."  (Compl. ¶ 18.)  However, Plaintiff acknowledges that these three teachers "did not have the same challenges [Plaintiff] had."  (Id. at 17, 20.)  Plaintiff also identifies three "other Jewish teachers" who experienced "disparate poor treatment by Principal James" (id. ¶¶ 20, 26), and another who was reprimanded for "not producing lesson plans," while her "African American co-teacher" was not reprimanded for the same conduct.  (Id. ¶ 25; see also id. ¶¶ 21-24, 27.)  Plaintiff proffers no other information regarding the circumstances or experiences of the other individuals to whom he refers that would indicate they were similarly situated to him.

Plaintiff alleges that Principal James hired "a young African American female gym teacher" to replace him.  (Id. ¶ 32; see also id. at 5.)  Finally, Plaintiff alleges that he was unable to secure positions at other schools after leaving P.S. 202, in part due to four open Office of Special Investigations cases pending before Principal James.  (Id. at 18.)

Plaintiff submitted a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on or about November 4, 2019 ("EEOC Charge"),[4]

---

[4] Plaintiff alleges that he filed his EEOC Charge on November 4, 2019 (Compl. at 6), although the EEOC Charge attached to his Complaint is dated November 14, 2019.

indicating that he was charging the New York City Department of Education with discrimination based on race and religion, and retaliation.  Plaintiff subsequently received a Notice of Right to Sue from the EEOC (Compl. at 21), and filed this action.  Plaintiff describes himself as a "discontinued probation physical education teacher."  (Id. at 10.)

## Discussion

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Where, as here, a litigant proceeds pro se, that litigant's submissions "must be construed liberally and interpreted to raise the strongest arguments that they *suggest*."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted).  "This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  Id. (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

---

Defendants' motion to dismiss on this point reads Plaintiff's Complaint to suggest that he in fact filed an EEOC Charge, as alleged, on November 4, 2019.  The Court adopts the same liberal interpretation for purpose of this motion.

Defendants raise a number of arguments as to why Plaintiff's Complaint should be dismissed.  The Court addresses each argument below.

Title VII Claims

Defendants seek dismissal of Plaintiff's Title VII claims to the extent those claims are premised on acts occurring prior to January 8, 2019, which is 300 days before November 4, 2019, the date on which Plaintiff alleges he filed his EEOC Charge.

Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).  Ordinarily, discrimination claims under Title VII must be filed within 180 days of the alleged unlawful employment practice.  See 42 U.S.C. § 2000e-5(e)(1).  However, where the "alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days."  Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (noting that New York has both antidiscrimination laws and an antidiscrimination agency) (citation omitted); 42 U.S.C. § 2000e-5(e)(1).  Even where some allegedly discriminatory actions occurred within the relevant 300-day window, however, discrete discriminatory actions occurring before that period are nonetheless time-barred.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

In this case, Plaintiff argues that any actions that occurred more than 300 days before he filed his EEOC Charge "can be considered as background evidence or under a

continuing violation theory." (Docket entry no. 23 ("Pl. Mem.") at 7.)  Plaintiff is correct to the extent that time-barred discrete actions may still be introduced as background evidence in support of a timely claim.  Morgan, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence to support a timely claim.").  Plaintiff has not, however, pled facts sufficient to invoke application of the continuing violation doctrine to this case.

"The continuing violation doctrine provides that '[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights] . . . the commencement of the statute of limitations period may be delayed until the last [violation].'"  Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) (quoting Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)).  "To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'"  Zoulas v. New York City Dep't of Educ., 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (citation omitted).  "Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position."  Id. at 50 (collecting cases).  "As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  Am. Council of Blind of New York, Inc. v. City of New York, 495 F. Supp. 3d 211, 245 (S.D.N.Y. 2020) (quoting Trinidad v. New York City Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)).

Plaintiff has alleged only a series of discrete acts, and has not alleged the sort of "repeated conduct" required to plausibly invoke the continuing violation doctrine.  Therefore, while Plaintiff may seek to introduce evidence of discrete acts occurring prior to January 8, 2019, to the extent relevant as background evidence in support of a timely discrimination claim,

the Court dismisses Plaintiff's Title VII claims to the extent they are premised on discrete acts that allegedly occurred prior to January 8, 2019.

NYSHRL and NYCHRL Claims Against the Department of Education

Defendants seek dismissal of Plaintiff's NYSHRL and NYCHRL claims as against Defendant the New York City Department of Education (the "DOE"), due to Plaintiff's failure to file a timely Notice of Claim as required by New York Education Law section 3813.[5]

New York Education Law section 3813 provides that:

> No action or special proceeding, for any cause whatever . . . relating to district property or property of schools . . . or claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, . . . or any officer of a school district, board of education, . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim. . . .

N.Y. Educ. Law § 3813(1) (McKinney's through L.2021, chapters 1 to 429). "A plaintiff asserting employment discrimination claims against a school district must comply with the notice

---

5   In an Order dated August 27, 2020 (docket entry no. 6), the Court dismissed Plaintiff's claims against the DOE—and substituted the City of New York as a Defendant in its place—on the ground that "[a]gencies of the City of New York generally cannot be sued in their own names and must instead be sued in the name of the City of New York." That decision was erroneous, because the DOE is a creation of the Board of Education of the City School District of New York, which is "neither a department nor agency of the City," and which can be—indeed, must be—sued separately from the City. Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, 77 (2d Cir. 2011) (Straub, C.J., concurring in part); accord, e.g., Williams v. City of New York, No. 12-CV-8518-RJS, 2014 WL 1383661, at *8 (S.D.N.Y. Mar. 26, 2014) ("[T]he City is not liable for the actions of the NYCDOE or its employees absent some action by the City itself. . . . Courts have consistently rejected the argument that teachers may sue the City on the basis of their employment by the NYCDOE."), aff'd, 602 F. App'x 28 (2d Cir. 2015). The Court will therefore refer to the DOE as the relevant municipal defendant in the remainder of this Memorandum Order, terminate the City of New York as a Defendant in this action, and reinstate Defendant the DOE as a Defendant in its place.

of claim requirements in Section 3813." Bacchus v. New York City Dep't of Educ., 137 F. Supp. 3d 214, 234 (E.D.N.Y. 2015).  Section 3813(1) does not apply, however, to actions against school principals.  Collins v. City of New York, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) ("Superintendents qualify as officers upon whom a notice of claim must be filed, but principals do not.").

Here, the Complaint does not allege (and Plaintiff's opposition brief does not proffer) that Plaintiff presented a Notice of Claim to the DOE at any point prior to filing this action.  Moreover, the Court cannot excuse Plaintiff's failure to satisfy section 3813 by reliance on Plaintiff's EEOC Charge as a Notice of Claim, because that charge was not "filed within the three-month period" after Plaintiff's latest alleged adverse employment action, Salahuddin v. New York City Dep't of Educ., No. 15-CV-6712-LTS-DCF, 2016 WL 5477739, at *3 (S.D.N.Y. Sept. 29, 2016), and because Plaintiff does not allege that he served his EEOC Charge upon the governing board of the DOE.  Bacchus, 137 F. Supp. 3d at 234 ("Though in some instances courts have allowed a complaint of discrimination filed with the EEOC or the NYSDHR to substitute for the actual notice of claim, they have held plaintiffs to the requirement to serve on the DOE's governing board.").  Finally, even if the Court were to construe Plaintiff's arguments in opposition liberally to include a request for leave to file a late Notice of Claim under section 3813(2-a), the Court would deny that request due to the lack of any showing from Plaintiff that the factors set forth in that subsection (including, in particular, whether the DOE had knowledge of the essential facts constituting the claim within three months after the claim's accrual, or a reasonable time thereafter) favor granting such a motion.  See Melcer v. City of New York, 185 A.D.3d 672, 674 (2d Dep't 2020).  The Court therefore dismisses Plaintiff's NYSHRL and NYCHRL claims against the DOE.

Section 1981 Claims

Defendants seek dismissal of Plaintiff's Section 1981 claims against the City of New York and Principal James in his official capacity, on the ground that Section 1981 does not provide a separate private right of action against state actors.  See Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018) ("§ 1981 does not provide a separate private right of action against state actors.").

Plaintiff has not responded to Defendants' motion insofar as it seeks dismissal of Plaintiffs' section 1981 claims against the City of New York and Principal James in his official capacity, and Duplan's holding is binding on this Court.  The Court therefore grants Defendants' motion to dismiss Plaintiff's section 1981 claims as unopposed and on the merits.  See Chidume v. Greenburgh-N. Castle Union Free Sch. Dist., No. 18-CV-01790-PMH, 2020 WL 2131771, at *9 (S.D.N.Y. May 4, 2020) (applying Duplan to prohibit section 1981 claims as against both municipal and individual defendants).

Like the Second Circuit in Duplan, however, courts in this District generally construe section 1981 claims against government entities—especially those brought by pro se plaintiffs—"as causes of action brought under § 1983," and "discuss whether the claims can survive pursuant to § 1983 caselaw."  In re New York City Dep't of Educ., No. 15-CV-7150-AJN, 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019) ("Following the Second Circuit's approach in Duplan, the Court will construe the § 1981 claims as causes of action brought under § 1983 and discuss whether the claims can survive pursuant to § 1983 caselaw.").  So construed, Plaintiff's section 1983 claims against the DOE and Principal James in his official capacity fail to state a cause of action given the absence of any allegations that the acts challenged in this case were performed pursuant to a governmental policy or custom.  Duplan, 888 F.3d at 621 ("Moreover, if we construe Duplan's § 1981 claims as brought under § 1983, they still fail

because Duplan has failed to allege that the 'challenged acts were performed pursuant to a municipal policy or custom,' as required to maintain a § 1983 action against a municipality." (quoting Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004)); Chioke v. Dep't of Educ. of City of New York, No. 15-CV-01845-ERK-CLP, 2018 WL 3118268, at *15 (E.D.N.Y. June 25, 2018) ("[E]ven had Chioke sued the DOE under § 1983 . . . the DOE would be immune from suit under Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978)); Rothbein v. City of New York, No. 18-CV-5106-VEC, 2019 WL 977878, at *3 (S.D.N.Y. Feb. 28, 2019) ("Monell's 'policy or custom' requirement applies as much to a suit against a municipal officer in his or her official capacity as it does to a suit against the municipality itself." (citing Patterson, 375 F.3d at 226)).  Moreover, Plaintiff's claims arise primarily from the alleged acts of Principal James, and school principals are as a matter of law not "final policymaker[s]" for the New York City Department of Education for purposes of Monell.  Agosto v. New York City Dep't of Educ., 982 F.3d 86, 101 (2d Cir. 2020).

    The Court therefore grants Defendants' motion to dismiss Plaintiff's Section 1981 claims (even to the extent construed as brought pursuant to section 1983) against the City of New York and Principal James in his official capacity.

Employment Discriminations Claims

    Defendants move to dismiss Plaintiff's discrimination claims under Title VII, the NYSHRL, and the NYCHRL, to the extent the claims are not otherwise barred, principally on the ground that the Complaint fails to allege facts giving rise to a plausible inference of racial or religious discrimination.[6]

---

[6] Because Defendants concede that Plaintiff's job discontinuance is an adverse employment action for purposes of Title VII, the NYSHRL, and the NYCHRL (Def. Mem. at 15-16), the Court does not reach at this stage the question of whether Plaintiff's

A plaintiff alleging employment discrimination on the basis of race or religion, under any of Title VII, the NYSHRL, or the NYCHRL, must allege facts at the pleadings stage plausibly supporting at least "a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015); Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016) (recognizing that, though the NYCHRL is "more protective" than its state and federal counterparts, a plaintiff must still meet his "burden of showing that the conduct [complained of] is caused by discriminatory motive" in support of a claim under that law). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)); see also Mesias v. Cravath, Swaine & Moore LLP, 106 F. Supp. 3d 431, 436 (S.D.N.Y. 2015) ("actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" may "give rise to an inference of discriminatory motive" (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996))).

Construing the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has met his burden of alleging facts plausibly supporting an inference of religious and racial discriminatory motivation in connection with his discontinuance from P.S. 202.

---

other alleged mistreatments amount to anything more than "[e]veryday workplace grievances, disappointments, and setbacks," which "do not constitute adverse employment actions within the meaning of Title VII." Chukwuka v. City of New York, 795 F. Supp. 2d 256, 260 (S.D.N.Y. 2011), aff'd, 513 F. App'x 34 (2d Cir. 2013).

In support of his religious discrimination claims, Plaintiff relies in large part on Principal James's having questioned Plaintiff as to whether he was Jewish. (Compl. ¶ 11.) While that question by itself is fairly neutral, Principal James asked it in the context of a meeting about Plaintiff's potential tenure, only a few months before Plaintiff's discontinuance, and without providing any neutral reason for asking the question. See Pronin v. Raffi Custom Photo Lab., Inc., 383 F. Supp. 2d 628, 637 (S.D.N.Y. 2005) ("[I]n determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, i.e., a decision-maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decision-making process."). Moreover, Plaintiff also alleges that Principal James ignored Plaintiff's reports of incidents in which students referenced Plaintiff's religion in derogatory fashion, and that Principal James was reluctant to grant Plaintiff a one-day absence to observe a religious holiday. (Compl. ¶¶ 12, 28-31.) Together, these factual allegations suffice to meet Plaintiff's minimal burden to raise an inference of religious discrimination in connection with his discontinuance from P.S. 202.[7]

---

[7]   Defendants cite to Weinstein v. City of New York, in which this Court concluded, at summary judgment, that the mere fact that an investigator (who was not the person who made the final decision to terminate a plaintiff's employment) asked whether the plaintiff was Jewish did not, in the absence of "other indicia of discrimination," suffice to meet the plaintiff's burden to make a prima facie showing of religious discrimination. No. 16-CV-6034-LTS-DCF, 2019 WL 1410746, at *8 (S.D.N.Y. Mar. 28, 2019). However, that same plaintiff's allegations survived a motion to dismiss. Weinstein v. City of New York, No. 16-CV-6034-LTS-RLE, 2017 WL 3891699, at *3 (S.D.N.Y. Sept. 5, 2017) ("Plaintiff has pleaded minimal factual support that he was terminated under circumstances that support an inference of discrimination [on the basis of his religion] through his allegations of an inquiry as to his religion and unlawful disparate treatment as between himself and a Comparator whom Plaintiff alleges was similarly situated.").

Plaintiff's allegations also suffice to meet his minimal burden to raise an inference of racial discrimination in connection with his discontinuance. While the Amended Complaint does not describe any "incident where the individual defendant—or any member of the school staff—even mentioned Plaintiff's race" (Def. Mem. at 17),[8] it does allege that Principal James left unanswered Plaintiff's reports of racial comments about him made by students (Compl. ¶¶ 28-31), and that Principal James "brought in [a] younger African American teacher to replace [Plaintiff]." (Id. at 5 & ¶ 32.) At this stage, these allegations suffice to meet Plaintiff's "minimal" burden. Littlejohn, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage.").[9]

---

    Similarly, Defendants' argument as to Plaintiff's "difficulty controlling his classes" (docket entry no. 21 ("Def. Mem.") at 17) is one better suited for summary judgment practice, at which point Defendants will have the opportunity to "offer some legitimate, non-discriminatory reason for [their] actions." Weinstein, 2019 WL 1410746, at *6.

[8]    Principal James's story about his own racial background and his motivation for becoming an educator does not give rise to an inference of racial discrimination against Plaintiff; Plaintiff's subjective reaction to the mention of race does not support an inference as to a discriminatory motivation on the part of the principal.

[9]    The "mere fact" that a plaintiff was replaced with an employee outside his or her protected class does not necessarily suffice to meet a Plaintiff's burden to plausibly allege an inference of discrimination at the pleading stage where, for example, the plaintiff's other allegations "undercut" any such inference. Mansaray v. Kraus Sec. Sys., No. 20-CV-1415-RA, 2021 WL 183275, at *4 (S.D.N.Y. Jan. 19, 2021). In this case, Plaintiff's other allegations concerning allegedly similarly situated African American teachers who were treated comparatively well by Principal James or by other unnamed administrators at P.S. 202 (Compl. ¶¶ 21-25)—whether or not those allegations independently suffice to meet Plaintiff's burden to raise a reasonable inference of discrimination, given that Plaintiff admits that several of those educators did not have "the same challenges" as Plaintiff (id. at 17, 20; see also Def. Mem. at 16-17)—lend at least de minimis support to the inference raised by Plaintiff's replacement by a person outside his protected class.

The Court therefore denies Defendants' motion to dismiss Plaintiff's timely religious and racial discrimination claims.

Retaliation Claims

Defendants seek dismissal of Plaintiffs' retaliation claims on the ground that Plaintiff "does not point to any alleged protected activity that would support a claim of retaliation." (Def. Mem. at 19.)  Plaintiff does not respond to this portion of Defendants' motion to dismiss.

"To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).  "The standards for evaluating [ ] retaliation claims are identical under Title VII and the NYSHRL."  Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013).  The NYCHRL "defines the activities protected against retaliation more broadly" and requires only that a plaintiff show "that something happened that was reasonably likely to deter a person from engaging in protected activity," but "[o]therwise, a prima facie case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL."  McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) (citations and internal quotation marks omitted).

Under either test, a plaintiff's first task is to plausibly allege that he engaged in activity protected by the relevant civil rights statute, and that there was a "causal connection" between that activity and resulting adverse action.  Bonterre v. City of New York, No. 18-CV-745-ER, 2021 WL 4060358, at *6-7 (S.D.N.Y. Sept. 7, 2021).  Here, Plaintiff has failed to allege

that he was engaged in protected activity or that any adverse action resulted from that activity. Plaintiff's clearest enunciation of his retaliation theory comes not from his Complaint, but from his EEOC Charge, in which Plaintiff alleges that "Mr. Ronald James retaliated against me for advocating on behalf of special needs students, APPR and reporting incidents." He does not allege that he made or was retaliated against at any relevant time for any complaints of discriminatory treatment based on his race, color or religion.[10] Nor does he even allege that he complained of such discrimination against others and suffered retaliation as a result. Except for allegations that Plaintiff was "given negative ratings in lieu of reporting incidents" and "harassed for requesting a gym coach" and special assistance for students with ADD/ADHD (Compl. at 17-20), the Complaint does not detail the specific advocacy Plaintiff claims he performed, nor does it identify what specific acts of retaliation or harassment he claims to have followed that advocacy, or the "causal connection" between his advocacy and those actions. Plaintiff has therefore failed to allege plausibly that he suffered retaliation violative of Title VII or the antidiscrimination statutes under which he asserts claims. The Court therefore grants Defendants' motion insofar as it seeks dismissal of Plaintiff's retaliation claims.

Leave to Amend

In the introduction and conclusion of Plaintiff's opposition brief, Plaintiff asks that, "if the Court finds that more factual detail is appropriate" as to any of his claims, the Court grant "leave to file an amended complaint with additional factual detail." (Pl. Mem. at 2, 11.)

---

[10] Plaintiff's EEOC Charge, which is the only evidence proffered in the pleadings of a complaint of discrimination, post-dated by several months the discontinuance of his employment at P.S. 202 and thus could not properly be a predicate for his retaliation claim. Bryant v. Begin Manage Program, 281 F. Supp. 2d 561, 573 (E.D.N.Y. 2003) ("the retaliation must occur after the protected activity").

Federal Rule of Civil Procedure 15(a)(2) directs this Court to grant leave to amend "freely" when justice so requires.  See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (hewing to the "liberal standard set forth in Rule 15").  This is "particularly true" as to pro se parties, B. Braxton/Obed-Edom v. City of New York, 368 F. Supp. 3d 729, 740 (S.D.N.Y. 2019), and where the party seeking leave to amend has not yet had the "benefit of a ruling" as to the "precise defects" in a party's claims.  Loreley, 797 F.3d at 190-91; Babyrev v. Lanotte, No. 16-CV-5421-ER, 2018 WL 388850, at *8 (S.D.N.Y. Jan. 11, 2018) ("[W]hile the Court has already granted Plaintiff the opportunity to amend his original Complaint, it was not in the context of a motion to dismiss and the Court has therefore not provided guidance as to how his claims may be adequately made.").

In this case, the Court is granting Defendants' motion to dismiss to the extent it seeks to dismiss Plaintiffs' untimely Title VII claims, Plaintiff's procedurally-barred NYSHRL and NYCHRL claims against the DOE, Plaintiff's Section 1981 claims against the DOE and Principal James in his official capacity, and Plaintiff's retaliation claims.  Plaintiff's opposition brief proffers no basis to believe that amendment as to any of these claims—several of which are procedurally barred, and others of which have already been detailed at length in Plaintiff's operative pleading—would not be futile.[11]  The Court therefore declines to grant Plaintiff an open-ended leave to amend on this record.  See Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004) ("amendment is not warranted '[a]bsent some indication as to what appellants

---

[11]   The Court notes that Defendants previously advised Plaintiff as to the bases for their motion to dismiss, and Magistrate Judge Freeman permitted Plaintiff an opportunity to amend without seeking leave of court (see docket entry no. 19).  Plaintiff declined to file an amended pleading.

might add to their complaint in order to make it viable'" (quoting Nat'l Union of Hosp. & Health Care Employees v. Carey, 557 F.2d 278, 282 (2d Cir. 1977))).[12]

CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss the complaint (docket entry no. 21) is granted to the extent it seeks dismissal of Plaintiff's Title VII claims that are premised on discrete actions occurring prior to January 8, 2019, Plaintiff's NYSHRL and NYCHRL claims against Defendant the DOE, Plaintiff's Section 1981 claims against the DOE and Principal James in his official capacity, and Plaintiff's retaliation claims.  It is denied in all other respects.

This Memorandum Order resolves docket entry no. 21.  The Clerk of Court is respectfully directed to terminate Defendant the City of New York as a Defendant, and to reinstate Defendant the New York City Department of Education as a Defendant, on the docket sheet of this action.  This case remains referred to Magistrate Judge Freeman for general pretrial management.

Chambers will mail a copy of this Memorandum Order to Plaintiff.

SO ORDERED.

Dated: September 28, 2021            /s/ Laura Taylor Swain
       New York, New York            LAURA TAYLOR SWAIN
                                     Chief United States District Judge

---

[12] If Plaintiff believes he would be able to remedy any of his dismissed claims through amendment, he should promptly confer with Defendants and, to the extent he is unable to obtain Defendants' consent, file a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), accompanied by a proposed amended pleading which would completely replace, not supplement, Plaintiff's original pleading.  Plaintiff is encouraged to consult with the Pro Se Legal Clinic provided by the New York Legal Assistance Group ("NYLAG") if he is considering any such motion.  See NYLAG, Legal Clinic for Pro Se Litigants in the SDNY, https://nylag.org/pro-se-clinic/ (last visited September 28, 2021).

**Copy mailed to:**
Moshe Kuperman
2569 W 2nd St., Apt 1
Brooklyn, NY 11223